UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PAUL F. BARITEAU                                                                                          PLAINTIFF

v.                                                                         CIVIL ACTION NO. 3:06CV-132-S

PNC FINANCIAL SERVICES GROUP, INC., et al.                                          DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court on the motion of the defendants, PNC Financial Services Group, Inc., PNC Bank National Association, and PNC Advisors (collectively "PNC"), to dismiss the plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). When a motion to dismiss is made, the court must take the allegations of the complaint as true and grant dismissal only when it is beyond doubt that the plaintiff can prove no set of facts entitling him to relief. *See Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957). For the reasons stated herein we will grant PNC's Motion.

### BACKGROUND

This case is derivative of other litigation: *Bariteau v. Krane*, No. 00-218 (W.D. Ky. filed Apr. 20, 2000) and *Military Channel, Inc. v. PNC Bank, Nat'l Ass'n (*In re *Military Channel, Inc.)*, No. 99-36062, Adversary No. 01-3165 (Bankr. W.D. Ky. filed on Nov. 30, 2001). In *Bariteau*, Paul Bariteau ("Bariteau"), also the plaintiff in the case *sub judice*, sued Leonard Krane, the Military Channel, Inc.'s ("MCI") chairman and senior vice-president, for the alleged misappropriation of funds from an MCI account at PNC (the "Airboss Account"). During the *Bariteau* litigation, Bariteau represented to this court that he was an MCI shareholder.

In *Military Channel*, it was discovered that Krane was able to misappropriate funds from the Airboss Account simply by calling an officer of PNC. This ignored the agreement entered into by

PNC and MCI at the time the Airboss Account was opened, under which two signatures were required to withdrawal over $1,000 from the account.

Bariteau has now brought this case against PNC asserting that by having allowed Krane to move money out of the Airboss Account without two signatures PNC (1) breached its agreement regarding the Airboss Account; (2) aided and abetted Krane in breaching his fiduciary duty to Bariteau; and (3) aided and abetted Krane in defrauding Bariteau. Bariteau also seeks reformation of the agreement governing the Airboss Account based on an alleged mistake in the execution of the agreement.[1]

## ANALYSIS

### I. Breach of Contract

In response to PNC's argument that he lacks standing to sue for breach of contract, Bariteau contends that he is a creditor beneficiary who has third party standing. He provides the affidavit of Robert Mohr ("Mohr"), MCI's former Vice President of Finance, in support of his argument. Mohr states that he insisted on the two signature requirement to protect MCI's major subscribers, like Bariteau.

Unfortunately, Mohr's affidavit is insufficient to confer third party beneficiary status upon Bariteau. Whether the parties intended Bariteau to "directly or primarily" benefit from the agreement must be determined from the contract itself. *United States v. Allstate Ins. Co.*, 754 F.2d 662, 665 (6th Cir. 1985) (quoting *Long v. Reiss*, 160 S.W.2d 668, 674 (1942)); *King v. Nat'l Indus., Inc.*, 512 F.2d 29, 32-33 (6th Cir. 1975) ("To determine whether the presumption that the contracting parties did not intend to benefit a third party has been overcome, we must look first to the . . . agreement

---

[1] It is actually difficult to discern from Bariteau's Amended Complaint what he seeks as his fourth cause of action, which is entitled "Liability Under the Common Law of Kentucky for Damages Caused by Mistake in the Execution of a Contract." In his Amended Complaint, Bariteau does not mention relief in the form of reformation. However, in his Response and Memorandum in Opposition to Defendants' Second Motion to Dismiss, he clarifies that his fourth cause of action "invokes the equitable power of the Court to reform a contract where the written document itself was not sufficient to implement what the parties really intended at the time."

itself."). But, as noted by PNC, "[n]either the Corporate Resolution nor the signature card contain any reference to Bariteau or 'major subscribers of MCI.'" Moreover, Bariteau has failed to cite any Kentucky case that recognizes third party beneficiary status when it is not apparent from the face of the agreement. As such, Bariteau lacks standing to assert his breach of contract claim.

## II. Aiding and Abetting a Breach of Fiduciary Duty

Bariteau is unable to maintain a cause of action for the tort of aiding and abetting a breach of fiduciary duty because his claim is time-barred. In Kentucky the tort of aiding and abetting has a five year limitations period. *See* Ky. Rev. Stat. § 413.120(7); *Anderson v. Pine South Capital, L.L.C.*, 177 F.Supp.2d 591, 604 (W.D. Ky. 2001) ("[T]he statute of limitations for a charge of aiding and abetting should fall under the section reserved for the underlying cause of action."); *Ingram v. Cates*, 74 S.W.3d 783, 787 (Ky. App. 2002) (stating that in regard to breach of fiduciary duty claims, "[t]here is no specific statutory provision providing a statute of limitations, and . . . therefore . . . KRS 413.120(7), providing a five-year limitation for actions not arising on contract and not otherwise enumerated, governs."). Krane's alleged breaches and Bariteau's alleged injuries occurred at various times in 1998 and 1999, more than five years before the filing of this suit.

As such, we reject Bariteau's argument that *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476 (Ky. 1991) mandates we apply the statute of limitations for fraud to a claim of aiding and abetting a breach of fiduciary duty. Bariteau clings to the language in *Steelvest* that states "a breach of fiduciary duty is equivalent to fraud." *Id.* at 487. This language, however, equates a breach of fiduciary duty to fraud for the purpose of determining tort liability for the interference with a known contractual relationship. According to the *Steelvest* court, "if the interference . . . is accomplished by some unlawful means such as *fraud*, deceit, or coercion[]", then tort liability exists, and "[w]e would presume to place the breach of fiduciary duty on an equal par with fraud and deceit." *Id.* (emphasis added). Nowhere does *Steelvest* mention equating a breach of fiduciary duty to fraud for the purpose of determining a limitations period.

Furthermore, the discovery rule is inapplicable to extend the statute of limitations for aiding and abetting a breach of fiduciary duty. *See G&K Dairy v. Princeton Elec. Plant Bd.*, 781 F.Supp. 485, 488 (W.D. Ky. 1991) (recognizing that "[w]hen the Kentucky General Assembly has intended for the 'discovery rule' to apply to an action, it has expressly enacted an applicable statute."); *Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286, 288 (Ky. Ct. App. 1998) (explaining that "[w]ith the exception of cases involving latent injuries from exposure to harmful substances, Kentucky courts have generally refused to extend the discovery rule without statutory authority to do so."). Instead, a claim for aiding and abetting a breach of fiduciary duty accrues when the plaintiff's injury occurred. *See Secter*, 966 S.W.2d at 287 ("Generally a cause of action is said to accrue when the injury occurs . . . .").

### III. Aiding and Abetting Fraud

Bariteau's claim alleging that PNC aided and abetted Krane in defrauding Bariteau also fails. Although Kentucky does not recognize the separate tort of "aiding and abetting," a plaintiff can proceed pursuant to the *Second Restatement of Torts* (the "Restatement") on the theory that the defendant aided and abetted the tortfeasor. *Hogan v. Goodrich Corp.*, 2006 WL 2037388, *1 (W.D. Ky. July 18, 2006) (citing *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky.1991) and *Farmer v. City of Newport*, 748 S.W.2d 162, 164-65 (Ky .Ct. App.1988)). Under the Restatement:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Bariteau has not alleged that PNC acted in concert or pursuant to a common design with Krane, and therefore, subsection (a) is not applicable. With regard to subsection (b), Bariteau has failed to allege that PNC actually knew that Bariteau was engaged in fraudulent conduct or that PNC had been generally aware of its role in Bariteau's fraud. Bariteau has provided some examples of PNC's actions that may indicate that PNC *should have known* of Krane's fraud, but this does not suffice. A pleading of actual knowledge is required. *See Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 533-34 (6th Cir. 2000) (stating that there is "no conflict between the position that an aider and abettor must have actual knowledge of the primary party's wrongdoing and the statement that it is enough for the aider and abettor to have a general awareness of its role in the other's tortious conduct for liability to attach[]", because "[i]f one is aware that he has a role in an improper activity, then surely he knows that the primary party's conduct is tortious.").

Furthermore, Bariteau has failed to plead facts that show PNC provided "substantial assistance or encouragement" to Krane in committing his alleged fraud. "One provides 'substantial assistance' if he 'affirmatively assists, or by virtue of failing to act when required to so enables . . . [the tortfeasor] to proceed.'" *Glidden Co. v. Jandernoa*, 5 F.Supp.2d 541, 555 (W.D. Mich. 1998) (quoting *Kolbeck v. LIT America, Inc.*, 939 F.Supp. 240, 247 (S.D.N.Y. 1996)). Most of Bariteau's allegations hang on PNC's failure to act (e.g., failure to enforce the two signature requirement). However, "[a]bsent a confidential or fiduciary relationship between the plaintiff and the aider and abettor, the inaction of the latter does not constitute assistance warranting aider and abettor liability." *Ryan v. Hunton & Williams*, 2000 WL 1375265, *8 (E.D.N.Y. Sept. 20, 2000). Bariteau has not claimed that PNC owed him a fiduciary duty, and therefore, PNC's inactions cannot constitute the "substantial assistance" needed to maintain an action against PNC for aiding and abetting Krane's alleged fraud. As such, Bariteau has also failed to sufficiently assert subsection (c), which also requires "substantial assistance."

## IV. Contract Reformation

It is within the court's equitable powers to reform a contract "on the ground of fraud or mutual mistake, or [if] the contract is illegal." *Childers & Venters, Inc. v. Sowards*, 460 S.W.2d 343, 345 (Ky. 1970). Bariteau, however, has not alleged that the agreement governing the Airboss Account was the product of fraud, involved mutual mistake, or is illegal. At most, he has alleged MCI's unilateral mistake in failing to include a provision that expressly provided that the Airboss Account and its two signature requirement was for the benefit of MCI's major subscribers. Unilateral mistake can only be the basis for reformation if "it is accompanied by fraud or inequitable conduct . . . [or] when . . . [the other party] knew or should have known that a material mistake had been made . . . ." *Nat Harrison Assoc. v. Louisville Gas & Elec. Co.*, 512 F.2d 511, 513 (6th Cir. 1975). But, again, there are no allegations of fraud or inequitable conduct or that PNC knew or should have known that a mistake had been made. Thus, Bariteau has failed to sufficiently state a claim for reformation of contract.

A separate order will be entered in accordance with this opinion.